# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 14-1142** (Berkeley County 12-F-135)

**James N. Mauldin,**
**Defendant Below, Petitioner**

**FILED**

**November 15, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner, James N. Mauldin, by counsel Matthew T. Yanni, appeals the circuit court's order of October 3, 2014, entered in conformance with the jury's verdict, convicting Mauldin of one count of death of a child by abuse, one count of child abuse resulting in serious bodily injury, one count of malicious assault, two counts of gross neglect of a child creating a substantial risk of serious bodily injury, and one misdemeanor count of providing false information to medical personnel regarding a child's injury. The State of West Virginia appeared by Assistant Prosecuting Attorney Cheryl K. Saville of Berkeley County.

This Court has considered the parties' briefs, their oral arguments, and the record on appeal. Upon contemplation of the standard of review, the briefs and arguments, and the record presented, the Court discerns no substantial question of law and no prejudicial error. Consequently, a memorandum decision affirming the order of the circuit court is the appropriate disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

The State's evidence at trial revealed that Mauldin lived in Martinsburg, West Virginia with his girlfriend, Jasmine Dawkins, and the couple's infant son. Mauldin shared custody of his other son, three-year-old Kaiwan "K.C." Connelly, with the child's mother, Shevecka Connelly, a Maryland resident. K.C. spent Thanksgiving Day 2011 with his mother before being picked up by Mauldin to visit for a few weeks. During the month of December, Ms. Connelly, who was without a vehicle, repeatedly and unsuccessfully attempted to contact Mauldin to arrange for K.C.'s return. On New Year's Eve 2011, an ambulance was dispatched to Mauldin's home in response to a call that K.C. had fallen and "busted his lip." When the ambulance arrived, K.C. was discovered, wet and cold, in full cardiac arrest on the bathroom floor.

1

Paramedics restored K.C.'s pulse and took him to the hospital. There, K.C. was observed to have visible scrapes, bruising, and swelling to the face, a lesion on both sides of his upper lip, and bruising around the entire circumference of his wrists. A mark on his thigh resembled the shape of a handprint. K.C.'s shorts were stuck to him and difficult to remove; when they were finally stripped away, K.C. was found to have suffered third-degree burns across his entire buttock area and at the top of one thigh. A CT scan disclosed various instances of subdural bleeding throughout both hemispheres of K.C.'s brain. Mauldin explained to a responding trooper that K.C. had fallen in the bathroom. The trooper later arrested Mauldin at the hospital upon being informed of the burns, though Mauldin asserted that K.C. had sustained them during the Thanksgiving stay with his mother.

K.C. was transported by helicopter to Children's National Hospital in Washington, D.C., where he died the next day. An autopsy was performed, confirming K.C.'s myriad traumas and revealing that the child had also been suffering from pneumonia. The medical examiner ruled that K.C.'s death was a homicide caused by multiple acute and chronic injuries.

The grand jury returned an indictment charging Mauldin in Count One and Dawkins in Count Two, respectively, with death of a child through child abuse by a parent, guardian, or custodian. *See* W. Va. Code § 61-8D-2a(a) (1994). The indictment also charged Mauldin in Count Three with child abuse causing serious bodily injury, *see id.* § 61-8D-3(b) [1996]; Mauldin in Count Four with malicious assault, *see id.* § 61-2-9(a) [2004]; Mauldin and Dawkins in Count Five and in Count Six with gross child neglect creating substantial risk of serious bodily injury, *see id.* § 61-8D-4(e) [1996]; and Mauldin and Dawkins in Count Seven with misdemeanor presentation of false information regarding a child's injuries, *see id.* § 61-8D-7 (1988). Dawkins stood trial in November 2013, after which she was convicted by a jury on Counts Five, Six, and Seven, but acquitted on Count Two.

Mauldin's jury trial commenced on March 25, 2014. The prosecution introduced a series of text messages sent in 2011 from late November to mid-December between telephones whose numbers were registered to Mauldin and Dawkins. The messages from Mauldin's phone were to the effect that the sender, *inter alia*, intended "to beat [K.C.] until he [listens]," agreed that K.C. "like[s] getting spankings," related that "I can't wait till I get home . . . [t]o beat em" after K.C. had urinated on himself, and, upon being informed of K.C.'s insubordination, threatened to "cave his little chest in." Mauldin testified in his own defense, blaming Dawkins for the abuse resulting in K.C.'s death. Mauldin's account of events contrasted markedly with that of Dawkins at her own trial, where she testified that Mauldin inflicted the beatings, and that her fear of Mauldin prevented her from reporting the abuse to the authorities.

2

At the close of the four-day trial, Mauldin was found guilty on each count charged in the indictment. The circuit court entered judgment in accordance with the jury's verdict on April 29, 2014, and, following a hearing on September 11, 2014, it entered an order on October 3, 2014, denying Mauldin's post-trial motions and sentencing him to forty years in prison on Count One, with concurrent lesser terms of imprisonment on the remaining convictions. Mauldin appeals, and, with leave of the Court, has filed a *pro se* supplemental brief.

The primary assignment of error is whether the circuit court erred in admitting the inculpatory text messages. Although Mauldin does not dispute that the subject phones belonged to him and Dawkins, respectively, he contends that the prosecution failed to establish a sufficient evidentiary foundation that the phones' owners actually sent the messages in question. In that regard, "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

The rules provide generally that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the government must produce evidence sufficient to support a finding that the item is what the proponent claims it is." W. Va. R. Evid. 901(a). In the case of a telephone conversation, the requirement is satisfied by "evidence that a call was made to the number assigned at the time to . . . a particular person, if circumstances, including self-identification, show that the person answering was the one called." *Id.* 901(b)(6). In *Commonwealth v. Koch*, 39 A.3d 996 (Pa. Super. 2011), which both sides acknowledge is persuasive on the point, the court observed that, absent direct testimony from someone with first-hand knowledge, the sender's or receiver's identity may be substantiated by "contextual clues in the . . . text messages themselves." *Id.* at 1005. The court in *Koch* reversed the defendant's conviction, concluding that the incriminating text messages in that case had been admitted in error. In so ruling, the court noted the lack of direct or circumstantial evidence of the author's identity, emphasizing that it was undisputed that some of the other messages emanating from the defendant's phone had been sent by someone else.

Here, there were no accounts of third-party use of the cell phones, and, in fact, the evidence was that Mauldin and Dawkins were the only two persons living in the household who were more than three years old. The context of the messages reveals discussions concerning K.C.'s behavior and his discipline, which are logical subjects for his father to discuss with a cohabiting adult but would constitute unusual topics of conversation among strangers to the household. Under the circumstances, the circuit

3

court did not abuse its discretion in ruling that the sources of the text messages had been identified with reasonable certainty and were thus admissible pursuant to Rule 901.[1]

The properly admitted text messages, including some indicating that Mauldin and Dawkins had purposefully avoided returning K.C. to Connelly for her inspection, were relevant to show intent, bolstering the prosecution's contention that K.C.'s fatal injuries were anything but accidental. Taken together with the substantial physical evidence and in particular the brutality of the injuries inflicted, the expert testimony regarding intent and severity, and Mauldin's ready access to K.C., the evidence indicating his guilt of each count charged in the indictment was more than sufficient to justify the jury's verdict. *See* syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) ("[T]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt."). We therefore reject Mauldin's contentions, grounded in the supposed insufficiency of the evidence, that the circuit court erred by denying his motions for a judgment of acquittal and for a new trial.[2]

---

[1] We likewise uphold the circuit court's denial of Mauldin's motion to suppress his noncustodial initial statement that K.C. had been injured by an accidental fall, and his subsequent written statement at the hospital—following proper *Miranda* warnings—in which, *inter alia*, he blamed Connelly for the burns.

[2] In his *pro se* supplemental brief, Mauldin continues the argument that he was convicted on insufficient evidence, and he raises several distinct assignments of error: (1) that his appointed appellate counsel was ineffective; (2) that he was denied compulsory process as the result of Dawkins's severance and subsequent absence from his trial; and (3) that he received an impermissibly disparate sentence compared to that imposed on Dawkins. None of the additional assignments merit prolonged analysis. To begin with, "an appellant's claim of ineffective assistance of counsel is generally not ripe for direct appellate review." *State v. Miller*, 194 W. Va. 3, 12, 459 S.E.2d 114, 125 (1995). Secondly, although the parties anticipated that, if called to testify, Dawkins would invoke her Fifth Amendment privilege against self-incrimination insofar as the appeal of her own convictions was yet pending, Mauldin did not issue a subpoena for her appearance; he was therefore not denied process as a matter of fact. Finally, Dawkins's sentence is not a proper comparator, inasmuch as Mauldin was convicted of the far more serious crime of inflicting death upon a child through abuse. To the extent that Mauldin asserts that Dawkins was similarly culpable or more so than he, it is simply a repackaging of his rejected argument that Dawkins was the person responsible for affirmatively causing K.C.'s death.

4

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED: November 15, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II